**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TRUSTEES OF THE IRON WORKERS LOCAL
25 PENSION FUND, et al.,

    Plaintiffs,

v.                                                  Case No. 09-CV-12370-DT

CRAWFORD DOOR SALES, INC., et al.,

    Defendants.
                                                        /

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
CONVERTING APRIL 21, 2010 HEARING TO A TELEPHONE CONFERENCE**

Before the court is Plaintiffs' motion for summary judgment, filed on January 19, 2010. The matter has been fully briefed, and the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant the motion.

**I. BACKGROUND**

Plaintiffs initiated this action on June 19, 2009 under the provisions of the Employees Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiffs are funds established under and administered pursuant to § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and ERISA. This action seeks recovery of delinquent fringe benefits allegedly owed by Defendants to Plaintiffs on behalf of the participants of those funds. Plaintiffs contend that Defendants owe money to the funds based upon a contract between the Iron Workers' Local 25 Union and Defendant Crawford Door Sales, Inc. ("Crawford Door" or the "corporate Defendant").

(Pls.' Mot. at 1.) Plaintiffs filed this action against the corporate Defendant, Crawford Door, as well as against two individual Defendants, William Hughes and Todd Hughes. Plaintiffs assert that the two individual Defendants are personally liable for the unpaid contributions because they breached their fiduciary duties to pay those benefits. Discovery has now closed, and Plaintiffs seek summary judgment against the corporate Defendant and Defendant Todd Hughes.

Defendants do not dispute that Defendant Crawford Door entered into the contract, or that Crawford Door owes money for delinquent fringe benefits. (Defs.' Resp. at 1.) Defendants dispute the exact amount owed and whether Todd Hughes is personally liable for the unpaid contributions.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not "'weigh the evidence [to] determine the truth of the matter but[, rather,] to determine whether there is a genuine issue for trial.'" *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party discharges its burden by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter,* 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial." *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

### A. Crawford Door

First, there is no dispute that Plaintiffs are entitled to summary judgment against Crawford Door. Defendants acknowledge this liability in their response brief, and counsel confirmed this on the record during a January 22, 2010 telephonic motion hearing. Defendants, however, dispute the amount owed for the unpaid contributions.

In their opening brief, Plaintiffs state that Defendants did not pay fringe benefit contributions from January 2009 through August 2009 in the amount of $25,556.11. (Pls.' Mot. Br. at 1.) This amount is based upon an audit conducted on September 30,

3

2009. (Pls.' Ex. 4.) Plaintiffs also contend that Defendants owe $1761.22 for liquidated damages incurred as a result of the audit. (*Id.*)

The total amount owed by Defendants has been reduced by a subsequent payment from a surety bond. Specifically, Crawford Door maintained a wage and welfare surety bond with Western Surety, which expired on April 15, 2009. (Pls.' Mot. Br. at 2.) After Plaintiffs made a claim, Western Surety paid Plaintiffs $14,889.16. (*Id.*) Plaintiffs assert that the amount of the bond was applied as follows: $12,581.66 toward the fringe benefits owed, and $2,307.50 for attorney fees and costs incurred by Plaintiffs for efforts to collect the fringe benefit contributions. (*Id.* at 2-3.) Thus, Plaintiffs argue that they are entitled to $14,735.67. This amount is calculated based on the $25,556.11 owed, minus $12,581.66 taken from the Western Surety Bond, plus $1761.22 owed for liquidated damages. (*Id.* at 3.)

Defendants do not dispute that Crawford Door owes delinquent benefit contributions, but argue that the actual amount owed, after the bond credit, is only $10,665.75. (Defs.' Resp. at 2.) Defendants first assert that the total amount owed is $25,554.91, rather than the $25,556.11 claimed by Plaintiffs. (Defs.' Resp. at 1.) Not only is this an immaterial dispute, amounting to a difference of only $1.20, but Defendants have failed to support this assertion with any documentation or explanation. The court will therefore reject Defendants' figure and accept Plaintiffs' figure as materially undisputed.

Next, Defendants "deny the claim of liquidated damages in that no any [sic] accounting information provided as to the claimed amount." (Defs.' Resp. at 1.) Defendants do not provide any further argument as to why they should not be liable for

4

liquidated damages. Plaintiffs, however, attached to their motion for summary judgment relevant documentation supporting this amount. The audit report itself specifically lists $1761.22 as the amount owed for liquidated damages. (Pls.' Ex. 4.) The relevant collective bargaining agreement provides for liquidated damages. (Pls.' Ex. 3 at 23.) The terms of the surety bond also contemplate liquidated damages. (Pls.' Ex. 7.) The court thus finds that Defendants have failed to identify a genuine issue of material fact as to this issue, and Plaintiffs are entitled to $1761.22 in liquidated damages.

Finally, Defendants argue that the entire amount collected on the surety bond should have been applied to the total amount owed for fringe benefit contributions, rather than partially for attorney fees. Defendants, again, provide no reasoned explanation for this argument. On the other hand, Plaintiffs point out that the surety bond expired in April 2009, and thus can only be utilized to pay for the fringe benefit contributions owed for January - March, 2009. (Pls.' Reply at 3; Pls.' Ex. 7.) The documentation attached to Plaintiffs' motion details that the amount owed for this time period is $12,581.66, which is the exact amount sought by Plaintiffs to be applied toward the total amount due. (Pls.' Ex. 3.) Plaintiffs have also attached to their reply brief a letter sent by Western Surety to Plaintiffs' counsel indicating that the fringe benefits owed from the surety bond amounts to $12,581.66, with the remaining amount to be applied to attorney fees. (Pls.' Reply Ex. 18.)[1] Based upon this documentation, and in the absence of any competing evidence or substantial argument from

---

[1] As with liquidated damages, the collective bargaining agreement and surety bond contract allow for liquidated damages. (Pls.' Ex. 3 at 23; Pls.' Ex. 7.)

Defendants, the court finds that Plaintiffs correctly reduced the total amount owed by $12,581.66, rather than $14,889.16 as Defendants suggest.

Accordingly, the court finds that Plaintiffs' motion for summary judgment should be granted as to the corporate Defendant in the amount of $14,735.67. The court finds that Defendants have failed to identify a triable issue of fact with respect to this amount and Plaintiffs are entitled to the total amount sought as a matter of law.

### B. Todd Hughes

Plaintiffs also seek a judgment against Todd Hughes, individually, for the amount of unpaid contributions. Plaintiffs contend that Todd Hughes is a fiduciary regarding plan assets and that he breached his fiduciary duties when he did not pay the fringe benefit contributions to the funds when they were owed. Plaintiffs argue that this breach of his fiduciary duties make him personally liable as a matter of law.

Defendants acknowledge that Todd Hughes is a Vice President of Crawford Door, but claim that he is not a fiduciary. Instead, Defendants assert that Todd Hughes is only a 2.5% owner of Crawford Doors, and he was not a signatory to the collective bargaining agreement. (Defs.' Resp. at 5.) Further, Defendants contend that even if Todd Hughes is a fiduciary, personal financial liability cannot be imputed to him. (*Id.* at 7.) The court disagrees.

Under ERISA, a fiduciary owes certain duties to the plan, and if he breaches those duties he is personally liable:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of

6

> assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a). The Sixth Circuit has stated:

> "Under ERISA § 404, a fiduciary owes strict duties to a plan and its participants." *Bridges v. Am. Elec. Power Co., Inc.*, 498 F.3d 442, 444 (6th Cir. 2007). Pursuant to this provision, a fiduciary must discharge his duties "solely in the interest of the participants and beneficiaries" and act with "the care, skill, prudence, and diligence . . . [of] a prudent man." 29 U.S.C. 1104(a)(1)(B); *see also Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 840-41 (6th Cir. 2003). A fiduciary that fails to comply with these standards may be held personally liable to the plan under § 409 for any resulting losses. *Bridges*, 498 F.3d at 444. For a fiduciary to be held liable, however, he must have been acting in a fiduciary capacity when taking the challenged action. *Hamilton v. Carell*, 243 F.3d 992, 998 (6th Cir. 2001).

*Pfahler v. Nat'l Latex Prods. Co.*, 517 F.3d 816, 829-30 (6th Cir. 2007) (footnote omitted).

Under ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(I). The relevant regulations provide that "plan assets" include "amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, *as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets.*" 29 C.F.R. § 2510.3-102(a) (emphasis added).

Thus, under ERISA, a person is a fiduciary to the extent he exercises any control over plan assets, and plan assets include amounts that are owed in fringe benefit

7

contributions.  Indeed, "[j]udges in this district have repeatedly held that contributions are plan assets as soon as they are due and owing." *Plumbers Local 98 Defined Ben. Pension Fund v. M & P Master Plumbers of Michigan, Inc.,* 608 F. Supp. 2d 873, 877 (E.D. Mich. 2009) (citing *Trustees of Mich. Regional Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc.*, 408 F. Supp. 2d 370, 371 (E.D. Mich. 2005), *Iron Workers Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F. Supp. 2d 794, 805 (E.D. Mich. 2004), *Operating Engineers' Local 324 Fringe Benefit Funds v. Nicolas Equip., LLC*, 353 F. Supp. 2d 851, 854 (E.D. Mich. 2004)); *see also LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir. 1997) (money withheld from employees' paychecks for deposit into pension fund was a plan asset)*; United States v. Grizzle*, 933 F.2d 943, 946-48 (11th Cir. 1991) (money withheld for deposit into vacation fund was a plan asset); *Iron Workers Local No. 25 Pension and Ben. Funds v. Steel Enterprises, Inc.,* No. 07-CV-10882, 2009 WL 3645633, at *4 (E.D. Mich. Oct. 30, 2009)*.*  These cases "universally treat delinquent payments to ERISA funds as de facto mismanagement of plan assets." *Plumbers Local 98 Defined Benefits Pension Fund.,* 608 F. Supp. 2d at 877.

Under this case law, the undisputed evidence before the court reveals that Todd Hughes is a fiduciary and he breached his obligations when he failed to make the fringe benefit contributions when they were owed.  Contrary to counsel's assertion in the response brief,[2] Todd Hughes testified during his deposition that he is a 5% owner of

---

[2]As "support" for any and all factual statements asserted in the response brief, Defendants counsel attached an "affidavit," purportedly "signed" by Todd Hughes, stating that he would attest to "the truth of the facts stated within this response."  (Defs.' Resp. at 10.)  The court rejects this affidavit for many reasons.  It is not validly signed or

8

Crawford Door. (T. Hughes Dep. at 6, Pls.' Ex. 6 at 6.) He further testified that he shares responsibility for day-to-day decision making for Crawford Door with his brother, but that he makes more of the decisions. (*Id.* at 7.) He, rather than his brother, is "basically" responsible for "oversee[ing] the day-to-day operation and sell[ing] service and replacement." (*Id.* at 11.) He also testified that he is the person who "does things like hiring and firing employees." (*Id.*) Defendant Todd Hughes also stated that he has "the decision-making power at Crawford Door Sales on whether to pay fringe benefit contributions" and that no one shares that responsibility with him. (*Id.* at 23.) He and his brother can both, individually, sign checks on behalf of Crawford Door. (*Id.*) He testified that Crawford Door received business income during the period of January to August 2009, and had business expenses for the same period. (*Id.* at 24.) While, Hughes stated that his company paid certain business expenses for that time period, (*id.* at 25-26, 29-30), he admitted that Crawford Door owes fringe benefit contributions for January 2009 through August 2009, (*id.* at 18). Hughes also testified that there was not anything about the audit or the auditor's work product that he thought was wrong. (*Id.* at 20.)

---

notarized; instead, counsel has placed an "/s/" before both Todd Hughes name and the generic "name" of "Notary Public." The court does not accept electronic signatures for affiant's signatures, nor for the signature of an unnamed notary public. Moreover, the court does not accept affidavits which merely incorporate a brief by reference, without detailing the specific facts to which the affiant is attesting. Finally, to the extent the "affidavit" contradicts any of Todd Hughs previous testimony, a party may not create a genuine issue of material fact by filing an affidavit that "essentially contradicts his previous deposition testimony" after a motion for summary judgment has been filed. *Penny v. United Parcel Serv.*, 128 F.3d 408, 415 (6th Cir. 1997).

Todd Hughes thus made the relevant day-to-day decisions, including which business expenses to pay or not pay, and he admits that he did not make the fringe benefit contributions. Thus, Todd Hughes "exercised control respecting disposition of plan assets, held those funds as a fiduciary, and under 29 U.S.C. § 1104(a)(1), was required to discharge his duty 'solely in the interest of the participants and beneficiaries of the Funds.'" *Plumbers Local 98 Defined Benefits Pension Fund.,* 608 F. Supp. 2d at 880 (quoting 29 U.S.C. § 1104(a)(1)(A) and citing *United States v. Panepinto*, 818 F. Supp. 48, 52 (E.D.N.Y.1993) (holding that defendants' failure to make required contributions constituted exercise of control over the disposition of employee welfare benefit plan assets under ERISA)). Because Todd Hughes was a fiduciary, and did not pay the owed contributions, he breached his fiduciary duties as a matter of law and, under ERISA, he is personally liable for the unpaid contributions owed to the funds. *Id.*[3] The court will thus grant Plaintiffs' motion for summary judgment as to both the corporate Defendant as well as to Todd Hughes.

## IV. CONCLUSION

IT IS ORDERED that Plaintiffs' motion for summary judgment [Dkt # 23] is GRANTED. Summary judgment will be awarded in favor of Plaintiffs and against

---

[3]Defendants appear to argue that because they did not co-mingle funds, and there is no evidence of liability under an alter-ego theory, the court should not pierce the corporate veil and impute liability on Todd Hughes. This argument, however, misses the mark. As Chief Judge Rosen has explained, "a veil-piercing determination . . . is unnecessary where the language of the statute imposing liability on ERISA fiduciaries, 29 U.S.C. § 1109(a), clearly indicates that once an officer of a corporation is deemed to be a fiduciary, he may be held personally liable for any damages caused by his breach of trust." *Plumbers Local 98 Defined Benefits Pension Fund*, 608 F. Supp. 2d at 880 n.3.

Defendant Crawford Door Sales and Todd Hughes in the amount of $14,735.67.

Judgment will issue at the conclusion of this litigation.[4]

      IT IS FURTHER ORDERED that the April 21, 2010 motion hearing is CONVERTED into a telephone conference. The court will initiate the call.

      S/Robert H. Cleland      
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated: April 16, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 16, 2010, by electronic and/or ordinary mail.

      S/Lisa Wagner      
      Case Manager and Deputy Clerk
      (313) 234-5522

---

[4] Plaintiffs did not move for summary judgment against Defendant William Hughes and the claims against him will therefore be set for trial at the next available trial date.